Lewark v. Parkinson.

W. H. LEWARK *et al., as Partners, etc.,* v. SOPHIA PARKINSON.

No. 14.404.   (85 Pac. 601.)

SYLLABUS BY THE COURT.

1. COMMON CARRIERS—*Owners of Hacks—Injury to Passenger.* Proprietors of hacks and cabs carrying passengers for hire are liable for all injuries caused by their failure to provide suitable vehicles, safe horses and harness, and a competent, careful driver.

2. ———— *Unsafe Horses — Defective Harness — Emergency — Time for Deliberation.* When the proprietors of a line of hacks and cabs engaged in carrying passengers for hire are sued for damages for injuries sustained by a passenger in a runaway caused by the team's becoming frightened and the harness breaking, an instruction is properly refused which charges that carriers are not liable for a mistaken exercise of judgment on the part of their servants in an emergency, nor for a failure of such servants to act with the utmost promptitude when the circumstances are such as to afford no time for deliberation.

3. DAMAGES—*Personal Injuries—Expenses.* Expenses incurred by an injured passenger, which resulted from the injuries, including compensation for services of nurses, are proper elements of damages in an action against the carrier in such a case, notwithstanding the services were performed by a member of the family of the injured person, if the services were necessary and the charges reasonable.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed May 12, 1906. Affirmed.

*J. H. Keith,* and *Charles Bucher,* for plaintiffs in error.

*Benson & Harris,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Plaintiffs in error are proprietors of a line of hacks and cabs operating at Coffeyville as common carriers of passengers and baggage between railway depots and elsewhere in the city. On the 7th day of March, 1902, Mrs. Parkinson, defendant in error, who was seventy-two years of age, was a passenger in one of the cabs, on her way from one depot to another, and was injured in a runaway. She brought this action to recover damages for the injuries sustained. The jury returned a verdict in her favor for $400, of which they allowed $150 for expenses incurred by reason of the injuries, and the remainder for pain and suffering. Plaintiffs in error seek to reverse the judgment, and assign numerous errors.

Defendant in error at the time of the accident was traveling from her home at Pomona, in Franklin county, to visit her sons, who lived at Wagoner, in the Indian Territory. It was claimed in her petition, and established by the evidence, that she was the only passenger in the cab when the team started to run, and that she looked out and saw that the driver had dropped or in some way lost the lines. She says that he jumped from his seat and ran to the door of the cab, which was at the rear, and opened the door and held his hand to assist her in getting out; that while attempting to get out she was thrown down and received the injuries complained of. The answer set up contributory negligence. Upon the trial the driver testified that the horses became frightened at a large piece of paper which the wind carried into the street in front of them; that one of the tugs broke, and then one of the lines broke, and he jumped off. He denied

that he opened the door for defendant in error, or. that he did anything to induce her to get out, but claimed that he was endeavoring to prevent her from doing so.

The injuries to Mrs. Parkinson were serious enough to prevent her from continuing her journey. She was carried into a private residence near by and cared for by strangers. Her sons came at once from Wagoner, and, while one remained to care for her, the other went back to Wagoner, returning the next day with his family physician, who took charge of defendant in error. The court admitted evidence of the expense incurred by the sons in these trips, and in taking their mother from Coffeyville to Wagoner, where she remained several weeks, and also of the expense of one of the sons in taking her later to her own home. These expenses and the time of the sons in nursing and caring for defendant in error were allowed by the jury as a part of the expenses incurred. It is seriously contended that as the sons were in duty bound to care for their mother, and because it appeared from the evidence that the wages of one of the sons, who was employed as a clerk in a store, were paid him by his employer during the time he claimed to have cared for his mother, it was error for the jury to allow defendant in error for these items of expense.

If defendants below are liable at all they are liable for the necessary expense caused by the injury to the passenger, including traveling expenses made necessary by the circumstances in which defendant in error was left by the accident. It became necessary for her sons to come to her and take care of her to the end of her journey, and, again, for some one to travel with her to her home. Reasonable compensation for nurse hire and attendance was a proper item of recovery, notwithstanding the persons who performed the services were relatives who might have been bound to take care of her without compensation, if she paid or be-

came liable for the expense and the service was required. In *Brosnan et al. v. Sweetser,* 127 Ind. 1, 26 N. E. 555, where the services were rendered by members of the family, it was said:

"If this be done by some good friend or member of the family, who donated his services, that is the good fortune of the appellee, and a matter with which the persons liable have no concern. If she had paid ten times the true value of such services she could only have recovered what such services were reasonably worth." (Page 8.)

(See, also, *Trapnell v. City of Red Oak Junction,* 76 Iowa, 744, 39 N. W. 884; *Kendall v. The City of Albia,* 73 Iowa, 241, 34 N. W. 833; *The Pennsylvania Company v. Marion,* 104 Ind. 239, 3 N. E. 874; *Varnham v. The City of Council Bluffs,* 52 Iowa, 698, 3 N. W. 792.)

Error is claimed because the court refused to permit defendants to prove that the driver was a competent, experienced driver of horses, and that his reputation in that respect was good. As well might a railway company seek to defend an action for injuries to a passenger by proving that the engineer whose negligence caused a wreck was a capable and experienced engineer, and that he bore a good reputation as such.

The theory of an unavoidable accident was not pleaded as a defense, and there was nothing in the evidence to warrant the court instructing in reference to it. The jury found in answer to a special question that the injuries were not the result of an unavoidable accident. It is complained that the court erred in refusing to give the following instruction:

"You are instructed that carriers are not liable for mistaken exercise of judgment on the part of their servants in an emergency, nor for a failure upon the part of their servants to act with the utmost promptitude when the circumstances are such as to afford no time for deliberation."

This was properly refused; the negligence of the carrier in permitting the emergency to arise is lost sight of in the instruction.    Moreover, it was not a correct statement of the law with respect to the liabilities of a common carrier for injuries caused to a passenger by the negligence of the carrier.    In *Sawyer v. Sauer*, 10 Kan. 466, the trial court instructed the jury as follows:

"That a stage-coach proprietor who carries passengers for compensation is responsible for all accidents and injuries happening to passengers which might have been prevented by human care and foresight.    He is bound to furnish gentle and well-broke horses, skilful, prudent and sober drivers; and the smallest degree of negligence in these particulars will render such proprietor liable for any injury to passengers therefrom."

This instruction was conceded to be correct in the abstract by counsel for plaintiff in error in that case, and was approved by this court, and afterward cited with approval in *Topeka City Rly. Co. v. Higgs*, 38 Kan. 375, 16 Pac. 667, 5 Am. St. Rep. 754.    The law imposes certain duties upon the carrier, and it is from these that his liabilities flow.    He is not an insurer against all defects.    He is, however, liable for all injuries caused by his failure to provide suitable vehicles, safe horses and harness, and a competent, careful driver.    It was said in *Crofts v. Waterhouse*, 3 Bing. (Eng.) 319, 321: "If there be the least failure in any one of these things, the duty of the coach proprietors is not fulfilled, and they are answerable for any injury or damage that happens." (See, also, *Budd v. United Carriage Co.*, 25 Ore. 314, 35 Pac. 660, 27 L. R. A. 279, and cases cited.)

The testimony of the driver established the carriers' negligence.    He testified that one of the horses "would run away if he got a chance."    The opportunity came, the horse ran away, the harness broke in two impor-

tant places, the driver jumped off, and the passenger was injured.

The doctrine of unavoidable accident and the reputation of the driver were never seriously involved in this case. The judgment is affirmed.

All the Justices concurring.